IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ALMA DE LA CRUZ,

    Plaintiff,

v.                                                      CASE NO. 1:13-cv-212-MP-GRJ

CAROLYN W COLVIN, Acting
Commissioner of Social Security,

    Defendant.

_____/

## REPORT & RECOMMENDATION

      Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act (the Act).  (Doc. 1.)   The Commissioner has answered, (Doc. 11) and both parties have filed briefs outlining their respective positions.  (Docs. 14, 15.)  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

### I.  PROCEDURAL HISTORY

      Plaintiff filed an application for supplemental security income on April 23, 2008, alleging disability due to diabetes, asthma, and cholesterol. (R. 285-289, 325.)  Plaintiff's claim was denied initially and upon reconsideration.  (R. 122-26.)  An administrative hearing was held before an Administrative Law Judge ("ALJ") on August 17, 2010.  (R. 82-94.).  The ALJ issued a written decision on October 29, 2010 finding the Plaintiff not disabled.  (R. 99-116.)  The Appeals Council granted Plaintiff's request for review and remanded the case back to the ALJ for a supplemental hearing and to

obtain additional evidence. (R. 118.)  The hearing was held on July 24, 2012.  (R. 70-81.)  Plaintiff, represented by counsel, testified at the hearing, and a vocational expert also presented testimony.  (R. 38-69.)

The ALJ issued a decision on August 20, 2012 finding that Plaintiff was not disabled within the meaning of the Act because she could perform her past relevant work.  (R. 23-32.)  Plaintiff requested review of the decision, but the Appeals Council denied her request. (R. 1-3.)  Plaintiff then appealed the ALJ's decision to this Court.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole,

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does

---

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

Because Plaintiff's challenge on appeal pertains only to the hypotheticals posed

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

to the VE and the ALJ's credibility assessment, the summary of the record will focus on those issues.

**A.    Medical Records**

Plaintiff was interviewed and examined by consultative examiner Lance Chodosh, MD, on February 19, 2009 and September 2, 2010. (R. 516-553) Dr. Chodosh opined that Plaintiff could lift and carry up to 50 pounds, sit for six hours, stand for four hours, continuously perform postural activities, and occasionally be exposed to environmental irritants. (R. 540-44.) He noted that although Plaintiff had diabetes and was treated for asthma, her diabetes was well controlled and without complications, and she had no asthma exacerbations. (R. 518, 551-552.) Dr. Chodish found that Plaintiff's physical exams were normal other than for obesity. *Id.* Dr. Chodish attempted to perform a spirometric pulmonary function test,[21] but was unable to complete the test due to Plaintiff's hyperventilation. (R. 524.) Dr. Chodish reported that Plaintiff's wheezing was only present during the pulmonary function test and disappeared when Plaintiff was distracted and performing other parts of the examination. (R. 524.) He surmised that Plaintiff's hyperventilation was partially due to a psychophysiologic reaction, tied to anxiety, and recommended a psychological assessment. (R. 549-553.)

Carmen Tozzo-Julian, Ph.D. performed a consultative psychological evaluation on August 17, 2011. (R. 554-561.) The examination revealed that Plaintiff's memory

---

[21]   The test measures how efficiently lungs take in and release air and can evaluate a broad range of lung diseases.

functions were moderately impaired.  (R. 557-560.)  Dr. Tozzo-Julian opined that the claimant had moderate limitations in responding to usual work situations and changes in a routine work setting.  *Id.*  Dr. Tozzo-Julian found, however, that Plaintiff had no limitations on her ability to interact with the public, supervisors, or co-workers. (R. 555.)  During the consultation, Plaintiff denied a history of panic attacks, depression, or hypomanic symptoms.  (R. 559.) Dr. Tozzo-Julian described her demeanor as "anxious."  (R. 559.)

Plaintiff's treating physician, Dr. Cotter, examined her on July 27, 2010. (R. 531.)  Plaintiff told her treating physician that "she was doing okay except that when she exercised, she became short of breath."  *Id.*  Dr. Cotter stated that this was a stable condition for Plaintiff.  *Id.*

**B.    Hearing Testimony**

Plaintiff testified that she last worked in 1996 for the Texas Visiting Nurse Service as a companion.  (R. 44.) Her duties consisted of visiting an elderly man, cleaning him, cooking for him, washing clothes, mopping, and sweeping. (R. 44.)  She said that while performing this job she spent about six hours sitting and four hours standing. (R. 44.)  She testified that she could lift up to 35 pounds and did so the previous day.  (R. 53.) Plaintiff stated that she stopped working due to fatigue and pain in her chest.  (R. 44.)  Plaintiff represented that she uses medication, including albuterol, a nebulizer, and prednisone. (R. 44-46.)

Plaintiff stated that on a daily basis, she takes care of her three-year old son,

cooks, washes clothes, and grocery shops with her husband. (R. 50.) She also goes to church and sometimes visits her extended family. (R. 51.) When asked by her attorney if she ever got anxious, translated as "nervous or jittery," she replied that she did not. (R. 54.)

**C.    Findings of the ALJ**

The ALJ found that Plaintiff could perform her past relevant work as a companion and was not disabled. At step three, the ALJ found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. ( R. 26.)   The ALJ then determined that the Plaintiff's RFC was as follows:

> "[T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that the claimant is limited to lifting or carrying ten pounds frequently and twenty pounds occasionally. The claimant is limited to sitting for six hours, and standing or walking for six hours in an eight-hour workday with normal breaks.  The claimant can occasionally climb, balance, stoop, kneel, crawl and crouch.  The claimant cannot perform work requiring exposure to heights but may be occasionally exposed to hazards, cold, heat, humidity and pulmonary irritants.  The claimant may be frequently exposed to vibration.  The claimant can communicate in simple English and is limited to performing routine, repetitive tasks (semi-skilled work)."

(R. 27.)

## IV.  DISCUSSION

Plaintiff raises two issues on appeal.  First, she argues that the ALJ did not properly include all of her impairments in the hypothetical questions posed to the VE,

specifically the Plaintiff's mental impairments. Second, Plaintiff contends that the ALJ's determination of her credibility was flawed because it only included 'meaningless boilerplate,' which did not explain the specific evidence that the ALJ considered in determining that Plaintiff's complaints were not credible.

A.   **The ALJ's decision was supported by substantial evidence and the hypotheticals posed to the VE properly included Plaintiff's mental impairments.**

The analysis for Plaintiff's first argument on appeal consists of two parts. First, the Court will address whether the ALJ's determination that Plaintiff could return to her past relevant work at step four, is supported by substantial evidence. Second, although the testimony of a VE was not necessary for the ALJ's determination at step four, the Court will address whether Plaintiff's mental limitations adequately were accounted for in the hypotheticals posed by the ALJ to the VE.

### 1. The ALJ's decision was supported by substantial evidence.

Plaintiff challenges the hypotheticals posed to the VE on the grounds that the ALJ did not include Plaintiff's mental impairments, specifically anxiety, in any of the hypotheticals. As a result of this flaw, Plaintiff argues that the ALJ failed to follow the law of this circuit and therefore reversal and remand is appropriate. Plaintiff's argument improperly conflates the jurisprudence regarding the use of a VE at step five with the step four analysis concerning a claimant's ability to perform past relevant work.

At step four, the claimant bears the burden of demonstrating that she cannot

return to her past relevant work.[22]  If a claimant's impairments do not prevent her from performing past relevant work, she is not disabled.[23]  While the testimony of a VE is often relevant at step five–after the burden has shifted to the Commissioner to prove that there are jobs that exist in significant numbers in the national economy that an individual with Plaintiff's RFC could perform–there is no requirement for an ALJ to use VE testimony to determine whether a claimant can perform his past relevant work at step four.[24]  A vocational expert's testimony *may* be used at this step, but it is certainly not necessary.[25]  Thus, the proper inquiry at step four is not whether the hypotheticals are complete, but whether the ALJ's finding at step four is supported by substantial evidence.

Assessing the entire record as a whole, the ALJ's determination at step four that the Plaintiff could return to her past relevant work is supported by substantial evidence. According to the VE, Plaintiff's past relevant work as a companion, as actually performed by Plaintiff, is a light duty position with an SVP of 3. (R. 56.)  The ALJ determined that Plaintiff's Residual Functional Capacity ("RFC") was light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations:

---

[22] Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990)("The claimant also bears the initial burden of proving that she is unable to perform her previous work.").

[23] 20 C.F.R. § 404.1520(e).

[24] Hennes v. Comm'r of Soc. Sec. Admin, 130 F. App'x 343, 345-46 (11th Cir. 2005)(quoting 20 C.F.R. 404.1560(b)(2)); see also Walker v. Comm'r of Soc. Sec., No. 6:07-cv-1647-Orl-18KRS, 2008 WL 5100120, at *6 (M. D. Fla. Dec. 2, 2008).

[25] Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990)(concluding "because the ALJ concluded that she [claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary").

> "[C]laimant is limited to lifting or carrying ten pounds frequently and twenty pounds occasionally. The claimant is limited to sitting for six hours, and standing or walking for six hours in an eight-hour workday with normal breaks. The claimant can occasionally climb, balance, stoop, kneel, crawl and crouch. The claimant cannot perform work requiring exposure to heights but may be occasionally exposed to hazards, cold, heat, humidity and pulmonary irritants. The claimant may be frequently exposed to vibration. The claimant can communicated in simple English and is limited to performing routine, repetitive tasks (semi-skilled work)."

These limitations are consistent with the ability to perform the job of a companion as Plaintiff previously performed it. ( R. 56-60.)

The ALJ's determination of Plaintiff's RFC is consistent with the medical evidence of record and Plaintiff's testimony at the hearing. Dr. Chodish, the consultative examiner, found Plaintiff's physical exams were normal except for her obesity. Dr. Chodish also reported that Plaintiff's diabetes was fairly well controlled and that she did not report any complications. Dr. Chodish limited Plaintiff to sitting for six hours, and standing or walking for six hours during an eight-hour workday. He also recommended that she be limited to lifting or carrying ten pounds frequently and twenty pounds occasionally. While Dr. Chodish noted that Plaintiff had moderately impaired memory and attentional deficits he found that Plaintiff did not have any problems interacting with the public, co-workers or supervisors. In short, Plaintiff had attentional deficits but no problem in social functioning.

Plaintiff's treating physician, Dr. Cotter, reported that Plaintiff's respiratory condition was stable. The treatment Plaintiff received for her impairments was minimal and there is no evidence that she ever had surgery or injections for relief of her

conditions. Plaintiff has not undergone any mental health counseling or therapy, and denied any history of depression or panic attacks.

Other evidence of record, including Plaintiff's testimony at the hearing, discloses that Plaintiff is active on a daily basis, including acting as primary caretaker for a three year old boy, cooking, washing clothes, watching television, going grocery shopping with her husband, occasionally visiting family out of state, and attending church. Notably, the ALJ determined that the level of concentration needed for these activities was at least consistent with the ability to complete routine and repetitive work.

Accordingly, the Court concludes that Plaintiff has not met her burden of demonstrating that she cannot return to her past relevant work. Comparing Plaintiff's RFC with the physical and mental demands of Plaintiff's past work as a companion, the ALJ correctly found that the Plaintiff would be able to perform the work as she actually performed it. The ALJ's step four determination is, therefore, supported by substantial evidence and the decision of the Commissioner is thus due to be affirmed.

**2. The hypotheticals posed to the Vocational Expert accounted for Plaintiff's mental limitations.**

While the ALJ was not required to utilize a VE at step four of the sequential analysis in determining whether the Plaintiff could perform her past relevant work, the questions posed to the VE, nonetheless, were proper and fully accounted for Plaintiff's impairments.

Generally, at step five, when posing a hypothetical to a VE, the ALJ is required to describe the Plaintiff's educational level, age, work skills, experience, and all of

Plaintiff's impairments included in the RFC.[26]  The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC.  For a response to a hypothetical question to constitute substantial evidence of work available to the claimant (at step five), the question must include all of the claimant's impairments.[27]

Plaintiff argues that the hypothetical questions posed to the VE did not account for her anxiety and other mental limitations.  Plaintiff's argument ignores the fact that the ALJ expressly limited Plaintiff's RFC to "routine and repetitive work," which adequately accounted for Plaintiff's attentional deficits cause by anxiety. Where, as here, a claimant is limited to simple, routine tasks the Eleventh Circuit has found that the limitation adequately addresses a claimant's moderate limitation in concentration, persistence, or pace where the record shows that the plaintiff could perform such tasks.[28]  As such, by including this limitation in the RFC the ALJ appropriately accounted for Plaintiff's memory deficits and her attentional deficits related to her anxiety.

The ALJ's determination that Plaintiff's should be limited to routine and repetitive work to account for her moderate difficulties in concentration, persistence and pace,

---

[26] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[27] Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176 (11th Cir. 2011).

[28] See, e.g., Hurst v. Comm'r of Soc. Sec., F. App'x 522 (11th Cir. 2013); *Dawson v. Commissioner of Social Security*, 528 F. App'x 975 (11th Cir. 2013); *Smith v. Commissioner of Social Security*, 486 F. App'x 874 (11th Cir. 2012); *Scott v. Commissioner of Social Security*, 495 F. App'x 27 (11th Cir. 2012).

*Case No. 1:13-cv-212–MP-GRJ*

was specifically discussed by the ALJ in his decision. The ALJ wrote:

> The claimant testified that she is able to lift as much as 35 pounds, cook, do laundry, and go shopping with her husband...care for her young child at home...attend[] church and visit[] with friends from church several times a month...occasionally visit[] family out of state...[t]hese activities suggest a level of concentration inconsistent with a disabling level of pain. Daily activities that include watching television support a finding that the claimant retains a degree of concentration consistent with the mental demands of at least routine and repetitive work.

(R. 30.)

Notably, the limitation to routine, repetitive tasks was expressly included in the hypothetical to the VE. The ALJ asked the VE:

> I want to add one more thing to the hypothetical. This person would be limited to routine, repetitive tasks on an unskilled level. Semi-skilled or unskilled level. Would that change any of your testimony with respect to the first four questions?"

(R. 58.) The VE replied that it would not.

Plaintiff's argument in her brief focuses on her anxiety as a mental impairment that impacts her ability to work. While the record discloses that Plaintiff was anxious, the ALJ appropriately considered any functional limitations as a result of anxiety. To be sure, the consultative examiner, Dr. Tozzo-Julian, characterized Plaintiff's anxiety as affecting her concentration and attention but not affecting Plaintiff's ability to interact with the public, co-workers or supervisors. Thus, because the only evidence of a functional limitation from Plaintiff's anxiety concerns her memory and attention (and not Plaintiff's social functioning) the ALJ properly found that her RFC should be limited to "routine and repetitive work," which appropriately accounted for Plaintiff's memory deficits and her attentional deficits caused by her anxiety.

In sum, contrary to Plaintiff's argument the ALJ recognized that Plaintiff had anxiety, addressed the evidence relevant to any functional limitations from her anxiety and then included a limitation in the RFC that appropriately accounted for the limitation. That limitation was included in the hypothetical to the VE and, therefore, even though the ALJ was not required to utilize a VE, the hypothetical question posed to the VE included all of Plaintiff's impairments and was not defective as Plaintiff contends. Accordingly, there was no error by the ALJ in concluding that Plaintiff could perform her past relevant work.

**B. The ALJ's credibility determination was supported by substantial evidence**

A claimant may establish his disability through his own testimony of pain or other subjective symptoms.[29] The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard."[30] Under that test, evidence of an underlying medical condition must exist.[31] If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or

---

[29] See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1560–61 (11th Cir.1995).

[30] See Foote, 67 F.3d at 1560.

[31] Id.

symptoms.[32]  A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.[33]

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.[34]  In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors.[35]  The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms.[36]  The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record.[37]

---

[32] Id.

[33] Id. at 1561.

[34] 20 C.F.R. § 404.1529(c)(1).

[35] Id. § 404.1529(c)(1)-(2).

[36] Id. § 404.1529(c)(3).

[37] Id. § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding.[38]  While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole.[39] The ALJ's articulated reasons must also be supported by substantial evidence.[40]  The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence.[41]  The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case.[42]

In this case, the ALJ determined that Plaintiff had a medically-determinable impairment that could reasonably be expected to produce her symptoms, and therefore the ALJ evaluated the intensity and persistence of Plaintiff's symptoms in determining how they limit her capacity for work, as reflected in the records and hearing testimony.[43] The ALJ concluded that Plaintiff's complaints were not credible to the extent they are

---

[38] See Foote, 67 F.3d at 1561–62.

[39] Id. at 1562.

[40]  Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir.1991).

[41]  Foote, 67 F.3d at 1562.

[42] Id.

[43]  See 20 C.F.R. 404.1529( c )(1)-(2).

inconsistent with the RFC. (R. 29.) The ALJ went on to discuss specific additional support for his credibility findings.

The ALJ expressly discussed and relied upon the medical evidence to support his conclusions regarding Plaintiff's credibility.[44] For example, the ALJ wrote:

> [T]he medical evidence does not support the severity of the claimant's symptoms or limitations as alleged. Treating doctors have been unable to correlate many of the claimant's reported symptoms with objective medical findings. Multiple examinations have also failed to result in medical findings that correlate the extent and severity of the claimant's reported symptoms. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature. The medical evidence of record reflects minimal objective findings of disabling limitations, and no history of surgery or injections for relief of any of the alleged conditions. There is no indication the claimant has required any emergency room treatment or inpatient hospitalization for any mental health problem. Moreover, there is no indication that she has undergone any mental health counseling or therapy. This lack of treatment is inconsistent with a level of severity that would preclude all sustained work activities.

(R. 30.)

Additionally, as the ALJ pointed out, Plaintiff has had minimal treatment for her diabetes, asthma, and anxiety. She has not sought emergency room treatment, inpatient hospitalization, or mental health counseling. Plaintiff also failed to follow-up on recommendations made by her treating doctor, which the ALJ concluded strongly suggested that her symptoms may not be so serious as to be totally disabling.[45]

---

[44] See 20 C.F.R. § 404.1529(c)(2).

[45] See Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 265 (11th Cir. 2009) (citing Watson v. Heckler, 738 F. 2d 1169, 1173 (11th Cir. 1984) for the "finding that a claimant's failure to seek medical treatment is relevant in assessing credibility").

The ALJ also assessed Plaintiff's credibility by contrasting her complaints of disabling symptoms to her daily activities.[46] In this regard the ALJ stated:

> The severity of the symptoms and the alleged effect on function is not entirely consistent with the...observations regarding activities of daily living, and alternations of usual behavior or habits. The claimant testified that she is able to lift as much as 35 pounds, cook, do laundry and go shopping with her husband. The claimant is apparently able to care for her young child at home without any particular assistance, which can be quite demanding both physically and emotionally...She testified that she attends church and visits with friends from church several times a month. She also testified that she attends occasionally visits family out of state. The claimant's ability to travel is inconsistent with her allegations of complete disability. These activities suggest a level of concentration inconsistent with a disabling level of pain. Daily activities that include watching television support a finding that the claimant retains a degree of concentration consistent with the mental demands of at least routine and repetitive work. Such a description of the claimant's daily activities and capacity for social functioning suggest a greater mental capacity tha[n] that alleged by the claimant during her hearing testimony and that would preclude all sustained work activity.

(R. 30.) Further, as the ALJ appropriately considered, Plaintiff has acted as primary caretaker for a young child for several years. She remains social and participates in activities to keep her house in order. Her testimony about her activities of daily living are, therefore, at odds with her complaints of disabling symptoms that preclude her from all work.

Accordingly, contrary to Plaintiff's argument that the ALJ's credibility finding was "meaningless boilerplate," a review of the ALJ's decision discloses that the ALJ discussed specific substantial evidence he considered and relied upon in concluding that Plaintiff's complaints were not credible. Therefore, the Court concludes that the

---

[46] 20 C.F.R. § 404.1529(c)(3)(i).

ALJ's credibility finding was consistent with prevailing law and was supported by specifically identified substantial evidence and, thus, there is no reason for the Court to disturb this finding.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** at Gainesville, Florida this 31st day of October 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

*Case No. 1:13-cv-212–MP-GRJ*